RAYMOND ISAAC AND JAMES BLACKMON *v.* STATE OF INDIANA.

[No. 970S218. Filed October 27, 1971. Rehearing denied December 22, 1971.]

320

*Mrs. Harriette Bailey Conn,* Public Defender of Indiana, *Carr L. Darden, Sr.,* Deputy Public Defender, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal from a conviction for armed robbery. On July 9, 1968, appellants waived formal arraignment and entered a plea of not guilty. Trial by jury commenced December 2, 1968, and the jury returned a verdict finding each appellant guilty of armed robbery. On December 16, 1968, the Court found the appellants guilty of the offense as charged. Raymond Isaac, appellant, was sentenced to thirteen (13) years in the Indiana State Prison. James Blackmon, appellant, was sentenced to ten (10) years at the Indiana Reformatory. On January 8, 1969, both appellants filed motions for a new trial which were overruled. On February 3, 1971, James Blackmon filed a motion for a new trial or in the alternative a motion for appeal which was overruled. On April 12, 1971, appellants filed a petition for permission to file amended belated motion to correct errors, which was granted. Appellants then filed amended belated motion to correct errors which was overruled. Appeal is taken from this last overruling.

Appellants make four (4) main contentions of error:

(1) The verdict of the jury is not sustained by sufficient evidence.
(2) The court erred in overruling the defendants' motion to suppress and strike out the evidence obtained during the search of Isaac's car without a warrant.
(3) The court erred in allowing certain hearsay testimony which was prejudicial to the defendants.
(4) Defendants were denied their constitutional right to effective assistance of counsel.

As to the allegation that the evidence was insufficient to sustain the verdict, the evidence most favorable to the state is as follows. Two men were seen standing on a street corner talking to each other between 11:30 and 11:45 A.M., June 25, 1968, on Main Street in Muncie, Indiana. One man was described as a Negro, twenty-one (21) or twenty-two (22) years old, wearing a bright green shirt and bright blue pants, six (6) feet tall and about one hundred forty (140) pounds.

The other was described as a Negro in his middle thirties, about five (5) feet seven (7) inches tall, wearing a light shirt and green or blue trousers. They talked for a few minutes and the taller man walked away. The shorter man then walked into the Muncie Finance Company and asked Mr. McFadden, the only employee present, how much it would cost to insure a 1967 Buick Electra 225. McFadden asked the man to be seated in order to fill out an application. The man then drew a gun and demanded money, wanting only bills. McFadden emptied the cash drawers and gave him the money which totalled one thousand twenty-five dollars ($1,-025), all in ones, fives, tens, and twenties. The man left the office and ran down the alley next to the finance company. McFadden described the man as a Negro, with a mustache, about thirty (30) years old, five (5) feet seven (7) inches tall, wearing a light or white hat with both sides pulled down, a light green shirt and light blue trousers. A description was radioed to the police in the area. State Trooper Smith in Allen County received a message from another trooper that the latter was following two men fitting the description on I-69. Smith waited at a cross-over and saw the men go by. He then joined the officer in pursuit and they stopped the car, a 1967 Buick Electra 225, at about 12:45 P.M. The two men were taken from the car and searched for weapons. In the course of searching one of the men, Officer Smith noticed a gun in the car which turned out to be a thirty-eight (38) caliber revolver. The men stopped were appellants, Isaac and Blackmon. Blackmon was wearing a green shirt and blue trousers. Isaac had a mustache and was wearing a tan short sleeved knit shirt and Bermuda shorts. Both men were Negro. They both closely fit the description of the two men as to height, weight, and age. The car was subsequently searched at the State Police post, nearby. In the trunk were found a forty-five (45) automatic, clothes matching those worn by the robber, and nine hundred sixty dollars ($960). The money had been stuffed inside a stereo tape cartridge.

The cartridge was in a carton of tapes in the trunk. A twenty dollar bill was discovered in the trousers found in the trunk. Isaac had forty dollars ($40) on his person consisting of thirty (30) one dollars bills and two (2) five dollar bills. Blackmon had thirty-five (35) or forty (40) dollars at the time. The amount taken was one thousand twenty-five dollars ($1,025) and the amount found in the car and on Isaac was one thousand twenty dollars ($1,020). There was no bill found larger than a twenty dollar bill and there was no bill taken in the robbery larger than a twenty dollar bill. Isaac fit quite closely the descriptions given of the robber and clothes found in Isaac's car fitting the description of the clothes worn by the robber. A 1967 Buick Electra 225 was the make of the car the robber inquired about insuring and the men were found riding in a 1967 Buick Electra 225.

This Court has stated many times that, upon review, we will not weigh the evidence nor determine the credibility of witnesses. Only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom will be considered on appeal. If there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. See, *Thomas* v. *State* (1971), 256 Ind. 309, 268 N. E. 2d 609; *Tibbs* v. *State* (1970), 255 Ind. 309, 263 N. E. 2d 728. The evidence in the case at bar is circumstantial, but we cannot say that, based on that evidence and the reasonable inferences to be drawn therefrom, the evidence is insufficient as a matter of law to convict Isaac. However, too many links are missing to allow the conviction of Blackmon to stand. A man was seen fitting his description talking to a man fitting Isaac's description a few minutes before the robbery but the man fitting Blackmon's description walked away and around the corner. He was not seen participating in the crime in any way. Blackmon was found riding in the car with Isaac but there was no showing that he had knowledge of the money in the trunk. It cannot be established

that Blackmon was aware of the robbery or that he took an active part in the robbery in any way. A mere suspicion that he may have participated is not sufficient. In *Lipscomb* v. *State* (1970), 254 Ind. 642, 261 N. E. 2d 860, two men drove into a service station and bought gasoline and cigarettes. One of the men, Lipscomb, returned to the car. The other man, Williams, followed the attendant into the station and robbed him of twenty dollars ($20.00). The attendant noted the license number of the car and the men were apprehended a short distance from the station. Lipscomb had no money on his person when apprehended while Williams had twenty-seven dolars ($27.00). Both men were convicted of armed robbery but this Court reversed the conviction of Lipscomb based on insufficiency of the evidence. Speaking for a unanimous Court, Judge Givan stated:

"There is no evidence in the record that the appellant was in any position to hear the conservation between the service station attendant and Williams at the time the robbery took place. There is no evidence that any weapon was ever displayed by Williams or any action which would have made it obvious to appellant that Williams was robbing the attendant. There is no evidence that the appellant left the station in any haste or made any attempt to hide his identity. The mere presence of the appellant seated in his car at the station while Williams robbed the attendant inside the station office is insufficient in itself to prove participation." 254 Ind. at 644, 261 N. E. 2d at 861.

Judge Givan went on to say:

"Mere suspicion that appellant may have known of Williams' actions is not enough. There must be some evidence from which a reasonable inference could be drawn that appellant had knowledge of and participated in the commission of the crime. We find no such evidence in the record before us." 254 Ind. at 645, 261 N. E. 2d at 862.

See also, *Bond* v. *State* (1971), 257 Ind. 95, 272 N. E. 2d 460. In the case at bar, mere suspicion is not enough and there is

insufficient evidence from which it could be reasonably inferred that Blackmon knew of and participated in the crime beyond a reasonable doubt. Thus, the conviction of Blackmon must be reversed.

Appellants contend the search of Isaac's automobile was not lawful. It is contended that there was no warrant issued for the search, and the consent to search the car was not unequivocal but conditional. We hold that, under the circumstances of this case, neither a search warrant nor consent of the appellant Isaac was necessary under *Chambers* v. *Maroney* (1970), 399 U. S. 42. In that case a service station was robbed by two men with guns. Two teenagers had earlier noticed a blue compact station wagon circling the block in the vicinity of the service station. They then saw the car speed away from a parking lot close to the station. They quickly learned of the robbery and told the police about the car and that one of the men was wearing a green sweater. The attendant told the police that one of the men was wearing a green sweater and the other was wearing a trench coat. A description of the car and the two men was broadcast over police radio. Within an hour a car fitting the description and carrying four men was stopped by the police. One of the men was wearing a green sweater. A trench coat was found in the car. The occupants were arrested and the car was driven to the police station. A thorough search of the car was conducted at the police station and incriminating evidence was discovered in the course of the search.

The United States Supreme Court distinguished between the search of a home and the search of a car, holding that automobiles and other vehicles may be searched without a warrant under circumstances which would not justify the search of a house without a warrant, ". . . provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." 399 U. S. at 48. The Court said:

"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting

the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an imemdiate search without a warrant and the car's immobilization until a warrant is obtained." 399 U. S. at 52.

See also: *Carroll* v. *United States* (1925), 267 U. S. 132; *Brinegar* v. *United States* (1949), 338 U. S. 160; *Cooper* v. *California* (1967), 386 U. S. 58, reh. and modif. den. 386, U. S. 988. This case is not affected by *Coolidge* v. *New Hampshire* (1971), 403 U. S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564, as the United States Supreme Court there said, ". . . [A]s to the automobile exception, we do not question the decisions of the Court in *Cooper* v. *California, supra,* and *Chambers* v. *Maroney, supra,* . . ." 403 U. S. at 482, 91 S. Ct. at 2046, 29 L. Ed. 2d at 592.

In the instant case, a description of the two men was obtained from witnesses and broadcast over police radio. Also broadcast was the possibility of a Buick Electra being involved. State Trooper Lasky saw two men who fit the description at a rest stop on I-69 less than an hour after the robbery. The two men started off again in a blue 1967 Buick Electra 225 convertible, and Lasky followed them. Trooper Smith received the radio dispatch concerning the suspects and also received a message from Lasky that he was following two men fitting the description of the suspects. Smith waited at a cross-over and joined the pursuit when he saw the two men go by and noted that they fit the description. The two officers stopped the car. Both occupants of the car were Negro. One was

about six (6) feet tall and one hundred forty pounds, in his early twenties, wearing a green shirt and blue trousers. The other was about five (5) feet seven (7) inches tall and about two hundred (200) pounds, with a mustache, wearing a tan knit shirt and Bermuda shorts. Blackmon fit the description of the one man seen as to height, weight, age, and race. He was also wearing clothes matching those of one of the men. Isaac fit the description of the other man as to age, height, and race, and to the fact that he had a mustache. While frisking one of the suspects for weapons beside the car, Smith noticed a revolver sitting on the stereo tape deck in the car. The revolver was taken from the car and the car was locked. The men were taken to a nearby police post. A short time later the car was towed to the post. It was then searched and clothes were found fitting the description of those worn by the robber. A forty-five automatic and nine hundred sixty dollars ($960) were also discovered.

Since these men fit the description given quite closely and a revolver was seen in the car, there was probable cause to believe these were the men who had perpetrated the crime. The men were stoppd about one hour after the crime in a make of car suspected of being involved in the crime, driving in a direction leading away from the crime and leading directly to another state about fifty miles away. There was reasonable cause to believe these men had committed the crime and there was also reasonable cause to believe that instruments of the crime, fruits of the crime, and evidentiary items concerning the crime would be found concealed in the car.

In this instance, it was quite reasonable to take the car to the police post before searching it. It was raining quite hard at the time and I-69, which has a seventy (70) mile per hour speed limit, is a very busy road, especially in and around Fort Wayne where the car was stopped. With the inclement weather and busy traffic travelling at high speeds, a search on the spot might have created a severe safety hazard, both for the passing cars and for the investigating officers. It also

served the owner's convenience and the safety of his car to have the automobile and the keys together at the police post.

No intrusion on Fourth Amendment rights resulted from the search of Isaac's automobile. The police had reasonable cause to believe instruments and fruits of the crime would be found in the vehicle. This car, originally stopped on the highway, was movable, the occupants were alerted, and the car's contents may never have been found again. The search was clearly reasonable under the doctrine enunciated in *Chambers* v. *Maroney, supra.*

Appellants next contend there was an improper admission of hearsay evidence which resulted in prejudicial error. It revolves around certain testimony given by Officer Smith of the Indiana State Police. He stated he had received a raido message from Officer Lasky that Lasky had seen the men at a rest stop on I-69. Lasky had died in an automobile accident three weeks prior to the trial. Such testimony did not concern any element essential to the crime but actually went to the question of probable cause to stop the car, arrest the men, and search the car. In the course of direct examination of this witness and prior to the testimony in question, the thirty-eight (38) revolver seen in the car and seized by Smith was placed into evidence. Also placed into the evidence was the forty-five (45) automatic found and seized in the course of searching the trunk. Defense counsel moved to have the thirty-eight (38) revolver excluded from evidence as being the result of an illegal search and seizure. The majority of the cross-examination of Officer Smith concerned the circumstances which led him to stopping the car. None of the questioning and testimony concerned facts surrounding the commission of the crime itself; it involved the facts and circumstances leading up to the arrest and search. The rule against the admission of hearsay evidence does not apply when the inquiries concern probable cause for making a search. *Hinds* v. *State* (1930), 201 Ind. 563, 170 N. E.

539. Of course, this is an issue for the court to decide but we fail to see how appellants were prejudiced by the jury's hearing this hearsay evidence. Appellants themselves admit that it was not necessary to introduce this evidence to prove anything. The sighting of the appellants at the rest stop did not really place them any closer to the scene of the crime. Where the evidence is sufficient to convict appellants without the hearsay testimony, the admission of that testimony is harmless. *United States* v. *Hood* (7th Cir. 1970), 422 F. 2d 737; *Johnson* v. *State* (1968), 251 Ind. 369, 241 N. E. 2d 270. While on the stand both appellants freely admitted to the fact on direct examination. Hearsay evidence of an uncontested fact is necessarily harmless. *Gayer* v. *State* (1965), 247 Ind. 113, 210 N. E. 2d 852, reh. den. 247 Ind. 113, 212 N. E. 2d 544. Appellants contend they were "forced" to take the stand to explain away this issue, thus waiving their constitutional right to stand mute, and that they were then prejudiced by having to admit prior convictions. We fail to see, and appellants are unable to explain, how the admission of hearsay on this point compelled appellants to take the stand. They admit that it clearly is not an essential element in the proof of the crime. It is an extraneous matter concerning probable cause and did not concern the substance of the proof. Since the facts were sufficient without this testimony to establish guilt, the hearsay testimony concerned an uncontroverted fact admitted by appellants, and there was no showing that this admission forced appellants to take the stand, error in its admission must be held to be harmless.

Appellants' final contention is that they were deprived of their constitutional right to effective assistance of counsel in their defense. Three allegations are contained in appellants' motion to correct errors. They are that appellants' attorneys failed to file a notice of alibi, failed to file a motion to suppress, and failed to state the basis for certain objections at trial. It must initially be stated that there is a presumption that an attorney has discharged

his duty fully, and it requires strong and convincing proof to overcome this presumption. *Shuemak* v. *State* (1970), 254 Ind. 117, 258 N. E. 2d 158; *Schmittler* v. *State* (1950), 228 Ind. 450, 93 N. E. 2d 184. We should not second guess trial counsel; errors in judgment, as long as they are honest errors, are no proof of incompetency. *Shuemak* v. *State, supra; Langley* v. *State* (1968), 250 Ind. 29, 232 N. E. 2d 611; *Haley* v. *State* (1956), 235 Ind. 333, 133 N. E. 2d 565; *Hendrickson* v. *State* (1954), 233 Ind. 341, 118 N. E. 2d 493. Failure to file notice of alibi does not necessarily deprive appellants of their right to effective counsel. *Wagner* v. *State* (1963), 243 Ind. 570, 188 N. E. 2d 914. Nor can failure to file a motion to suppress in this instance be considered evidence of incompetency since, as it turned out, the evidence was not illegally obtained. *Lindsey* v. *State* (1965), 246 Ind. 431, 204 N. E. 2d 357. Certainly an attorney cannot be considered incompetent for failing to do a futile thing. Nor can it be said, in this case, that the failure to object specifically to certain questions and give the basis therefor constituted evidence of incompetency. In fact, it has been held that total failure to object to certain errors in the trial proceedings does not necessarily constitute incompetency. *Spight* v. *State* (1967), 248 Ind. 287, 226 N. E. 2d 895. Appellants refer us to twelve instances where there was no basis given for the objection. In five of the twelve instances the objection was *sustained*. In another, the question was voluntarily rephrased by opposing counsel. Three of the objections which were overruled concerned the alleged hearsay testimony, and in that instance there was later a motion to have all the testimony in relation to the stop at the rest stop on I-69 stricken from the record as hearsay. Thus, a specific basis for the objection was given and the matter was preserved for appeal. That leaves only three instances out of the twelve where an objection without a basis was overruled. This is clearly no evidence of incompetency. Appellants also make other allegations in their brief which were not contained in their belated motion to correct

errors. One of these implied there was inadequate preparation before trial but there is absolutely no showing that this was the case. They also claim one of the attorneys who was from Ohio had an inadequate knowledge of Indiana law. The record does not so indicate. Although his knowledge possibly should have been greater, it was not such as to make his representation inadequate. Appellants themselves admit there was nothing perfunctory about the trial advocacy in the instant case. We agree. Clearly, appellants were vigorously and adequately represented at trial. There was no denial of effective assistance of counsel.

For the reasons stated above the judgment of the trial court is affirmed as to Isaac, but the conviction of Blackmon must be reversed.

Judgment affirmed in part and reversed in part.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 274 N. E. 2d 231.