RONALD IGNATIUS BAUER *v.* STATE OF INDIANA.

[No. 3-173A3. Filed August 27, 1973.]

*Thomas L. Ryan*, of Fort Wayne, for appellant.

*Theodore L. Sendak*, Attorney General, *Anthony J. Metz, III*, Deputy Attorney General, for appellee.

## I.

### STATEMENT ON THE APPEAL

STATON, J.—Bauer was in custody. He had been arrested and preliminarily charged with second degree arson when Detective Heingartner requested that he be brought from the lock-up to the interrogation room. Bauer was handed a printed interrogation rights and waiver form and asked to read it. He was told to sign it if he so desired. No legal counsel has been appointed or retained. Bauer signed the waiver and made a statement. Prior to trial, Bauer's legal counsel filed a motion to suppress the statement and for a hearing thereon which was denied by the trial court. Later at trial and after an objection to the admissibility of the statement by Bauer's counsel, a hearing was held out of the presence of the jury. The objection to the statement's admissibility was overruled. The jury found Bauer guilty of second degree arson and the trial court sentenced him to the

Indiana State Prison for a period of from one (1) to ten (10) years.

Bauer's motion to correct errors raises the issue of the trial court's overruling his motion to suppress as well as his objection to the statement at trial. This is the only issue that will be discussed in this opinion.

Our opinion concludes that Bauer did not knowingly, intelligently and voluntarily waive his constitutional rights prior to his custodial interrogation by Detective Heingartner. We reverse the trial court's judgment with instructions to grant Bauer a new trial.

## II.

## STATEMENT OF THE FACTS

Bauer telephoned his fiancee at her brother's home at 1910 W. Main Street in Fort Wayne, Indiana where he had recently been living. His fiancee's brother, Robert Jones, refused to let Bauer talk to his sister. Bauer told Mr. Jones that he would be sorry if he did not let him talk to Sandra Sue King. Jones advised Bauer to "buzz off" since he had to work the next morning. The Fort Wayne Fire Department answered an alarm at Jones' address where the garage was on fire. Jones told the police that he saw Bauer drive by the house during the fire, and he gave the police Bauer's description. The fire occurred on December 1, 1970 between 12:00 and 1:00 o'clock A.M. On the same day at approximately 7:00 o'clock A.M., Bauer was found asleep in the front seat of his car with the engine running. He was read his rights and placed under arrest at 7:00 o'clock A.M.[1] Detective Heingartner requested that Bauer be brought from lock-up to the interrogation room at approximately 8:15 o'clock A.M. on the morning of December 1, 1970.

---

1. Bauer was under a preliminary charge of second degree arson. IC 1971, 35-4-1-1; Ind. Ann. Stat. § 9-704(a) (Burns 1956). Bauer was later formally charged under IC 1971, 35-16-1-2; Ind. Ann. Stat. § 10-302 (Burns 1956).

The hearing held out of the presence of the jury disclosed that Heingartner asked Bauer ". . . to read and if he so desired to sign the interrogation rights and waiver form". Bauer did not have an attorney present nor had one been appointed for him. On cross-examination, Detective Heingartner could not be sure whether he asked Bauer if he could read. He testified that in his police report he noted that Bauer had a mental problem. His police report stated:

". . . Bauer seems to be under great stress and strain. Apparently he does have a mental problem or at least it does appear that he has a mental problem in the time that I was with him during the interview. He also told me that he has been having problems with his wife, that she is very sickly, that she has been in the hospital and that he has brought her from St. Louis to this city so that she could be with her next of kin."

Detective Heingartner further testified that Bauer told him that he had consumed twelve (12) beers and fifteen (15) shots of whiskey prior to 12:30 o'clock A.M. on December 1, 1970. He doubted Bauer's statement since Bauer had previously told him that he borrowed Ten Dollars ($10.00) from his boss for drinking and had Six Dollars ($6.00) and some change in his pockets when arrested. However, Bauer testified that he was an alcoholic. He had been treated at the Veterans Hospital and at the State Hospital at St. Louis. After December 1, 1970, he was treated for alcoholism at the Veterans Hospital a second time. When Detective Heingartner asked Bauer, "Are you at this time under the influence of any alcoholic beverages, drugs or narcotics?" Bauer replied, "I wouldn't say I am now. No." Detective Heingartner did not ask him to elaborate further on his negative answer.

When Detective Heingartner was asked:

"Q. . . . And, after you asked him, 'Do you consider yourself of sound mind' and he said, 'I don't know', did he elaborate on that answer?

"A. No."

Around 10:00 o'clock A.M. the same morning, Detective Heingartner handed Bauer a typewritten statement and told Bauer to read it and the italicized portion at the bottom and to sign it if he so desired. Bauer signed the statement.

Bauer's objection to the statement was overruled after the hearing. The jury found Bauer guilty of second degree arson, and the trial court sentenced him to the Indiana State Prison for a period of not less than one (1) nor more than ten (10) years. Bauer's motion to correct errors was overruled by the trial court and raises the questions set forth below for the purposes of this appeal.

## III.

## STATEMENT OF THE ISSUES

These two issues will be examined:

1. Was Bauer's statement given knowingly, intelligently and voluntarily to Detective Heingartner?
2. Did the trial court commit reversible error when it overruled Bauer's objection to the statement?

Our discussion of the law which follows answers the first issue negatively and answers the second issue affirmatively.

## IV.

## STATEMENT ON THE LAW

The United States Supreme Court in *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 recognized the inherent, compelling pressures upon an accused person during his custodial interrogation which tend to ". . . undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." An accused should be adequately and effectively appraised of his constitutional rights. This has become commonly known as the Miranda warning. It is

"not a ritual of words to be recited by rote according to didactic niceties. . . ." *Coyote* v. *United States* (10th. Cir. 1967), 380 F. 2d 305, 308. See also *Jones* v. *State* (1969), 253 Ind. 235, 252 N.E.2d 572.

Bauer signed the printed waiver form and made his statement without having an attorney present. When this occurred, a heavy burden rested on the State to demonstrate that Bauer knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. *Dickerson* v. *State* (1972), 257 Ind. 689, 276 N.E.2d 845; *Escobedo* v. *Illinois* (1964), 378 U.S. 478, 490, 84 S. Ct. 1758, 1764, 12 L. Ed. 2d 977. A printed waiver form signed by Bauer is not conclusive. *Dickerson* v. *State, supra.*

The crucial test of the Miranda warning was set forth in *Coyote* v. *United States, supra,* 380 F. 2d at 308:

". . . What Miranda does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. *The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights.*" (our emphasis)

In *Dickerson* v. *State, supra,* the Defendant was seen by a policeman while he was on other business at the police station in Fort Wayne, Indiana. The policeman told the Defendant: "There's a complaint on you. Someone's filed a complaint on you about rape." The Defendant was taken to the interrogation room. He ". . . was asked to read the form, and, if he understood it 'to sign same.'" Our Indiana Supreme Court stated in an opinion written by Justice Hunter that:

". . . Appellant should not have been instructed to sign the form if he understood it, but rather should have been informed that he would be signing a waiver of his rights and that he should sign it *only* if he desired to answer

questions at that time without the presence or advice of an attorney. A signature obtained with the instructions given by Officer Brunkhart is clearly not sufficient to indicate a knowing and intelligent waiver. To hold otherwise would be to place the entire burden of understanding his constitutional rights on the accused, and additionally, to rely solely on the accused to clarify the contradictory instructions given by the police officer. Furthermore, we would be imposing this burden in a case where the police officer neglected to ascertain whether the appellant could actually read." (Our emphasis) *Dickerson* v. *State, supra,* 276 N.E.2d at 850.

A mere signing of a printed waiver of rights form by an accused in custody before his interrogation without ██ any assurances that the accused fully understands his constitutional rights is error.

Overruling Bauer's objection to the use of his statement at trial cannot be considered harmless error. Without the statement, the residual evidence was circumstantial. *Beeman* v. *State* (1953), 232 Ind. 683, 115 N.E.2d 919. Once constitutional error has been shown, a rebuttable presumption arises that the error is prejudicial. The State has the burden to show that Bauer was not harmed by the error. *Harris* v. *State* (1967), 249 Ind. 681, 231 N.E.2d 800. It is the State's contention that Bauer was sufficiently advised of his rights and that the forms signed by him ". . . speak for themselves." Bauer's statement was an essential part of the State's case against him. Its erroneous admission at trial can never be harmless error beyond a reasonable doubt. *Goodloe* v. *State* (1969), 253 Ind. 270, 278, 252 N.E.2d 788 (Concurring Opinion) ; *Chapman* v. *California* (1967), 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705.

## V.

## DECISION OF THE COURT

A signed printed waiver form is not conclusive upon the question of whether the defendant has made a knowing,

intelligent and voluntary waiver of his constitutional rights. Where the interrogation takes place without the presence of an attorney for the defendant, a heavy burden rests on the State to demonstrate a knowing, intelligent and voluntary waiver. The State failed to meet this burden in the present case. A mere signing of a printed waiver of rights form by an accused in custody without an attorney and without some interrogative assurances that the accused fully understands his constitutional rights is error.

The trial court committed error when it overruled Bauer's objection to the statement.

This error is not harmless error since the statement is an essential part of the State's case against Bauer. Therefore, the judgment of the trial court should be and the same hereby is reversed with instructions to grant Bauer a new trial.

Sharp, J., concurs; Hoffman, C.J., concurs in result.

NOTE.—Reported at 300 N.E.2d 364.