WILLIAM GADDIS *v.* STATE OF INDIANA.

[No. 575S136. Filed October 20, 1977. Rehearing denied December 22, 1977.]

E. *Kent Moore, Moore, Sandy, Moore & Deets,* of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Assistant Attorney General, for appellee.

PIVARNIK, J.—On January 23, 1975, appellant Gaddis was convicted on three counts at the conclusion of a jury trial in Fountain Circuit Court: first degree murder of a police officer who was in the line of duty, felony murder, and commission of a felony while armed. He was sentenced to death by electrocution, life imprisonment, and twenty years imprisonment, respectively, for the three crimes.

The Grab-It-Here Food Store in Crawfordsville was robbed at gunpoint at about 9:00 p.m., on August 27, 1974. Those present described the lone perpetrator as a large black man wearing a royal blue shirt. Informed of the robbery, the radio dispatcher for the Crawfordsville Police Department passed a description of the suspect on to Lieutenant Russell Baldwin. Officer Baldwin reported a short time later that he was following a blue Oldsmobile with Michigan license RGR 694. Officer Baldwin then stopped the Oldsmobile and approached it. The driver of the Oldsmobile, described by witnesses nearby as a tall, largely built black man in a blue shirt, got out of his car and walked up to within three feet of the officer. He then pulled a gun and killed Officer Baldwin with three shots.

The suspect's car was next seen that night by police traveling east on Interstate 74, at which time a pursuit began. At the intersection of the interstate and State Road 32, the Oldsmobile collided with another car. Three officers then approached the Oldsmobile and found that there was no one in it.

At 4:30 p.m. on August 29, a barefoot hitch-hiker on Interstate 74 was picked up by the driver of a white Volkswagon station wagon. The pick-up was observed by a truck driver, who had heard a description of the shooting suspect on his citizen's band radio. Noticing that the hitch-hiker matched this description, the trucker transmitted this information on his radio. Shortly thereafter, the white Volkswagon was stopped by numerous patrol cars on the interstate and appellant Gaddis was apprehended. Gaddis told police that he had spent the night before in a barn, and that he had lost his shoes in corn and bean fields.

Six issues are presented for our review in this appeal. These issues concern: (1) the existence of probable cause for appellant's arrest; (2) the propriety of the search of appellant's abandoned car; (3) admission into evidence of an in-

custody statement of appellant; (4) admission of the in-court identification testimony of eight eyewitnesses; (5) admission of appellant's blue shirt into evidence; (6) the imposition of the death penalty, and the imposition of the life imprisonment sentence along with the death sentence. Two other errors asserted by appellant are waived. Appellant claims error in relation to the trial court's pre-trial discovery order. As this issue is not presented and argued in the argument section of appellant's brief, however, it is waived pursuant to Ind. R. Ap. P. 8.3 (A) (7). *Jenkins* v. *State,* (1975) 263 Ind. 589, 335 N.E.2d 215. *Loza* v. *State,* (1975) 263 Ind. 124, 325 N.E.2d 173. Appellant further asserts error in the refusal of the trial court to give three of his tendered instructions. As none of these instructions are recited verbatim in the argument section of his brief, these are also waived pursuant to Ind. R. Ap. P. 8.3 (A) (7). *Buchanan* v. *State,* (1975) 263 Ind. 360, 332 N.E.2d 213; *Frasier* v. *State,* (1974) 262 Ind. 59, 312 N.E.2d 77.

## I.

The first alleged specification of error is that since there was no probable cause for appellant's arrest, evidence seized from his person at that time was improperly admitted at trial. As shown in the recitation of facts, a truck driver who knew appellant's description gave police a description of the station wagon in which appellant was picked up on the interstate. The arresting officers thus knew: appellant's description, that a person meeting that description was recently seen in the vicinity, the description of the vehicle in which appellant was riding, and, the road upon which appellant was riding. The record also shows that the arresting officers knew that appellant had disappeared from his Oldsmobile into the fields nearby Interstate 74 on the previous night. Upon stopping the white Volkswagon station wagon in which appellant was riding, the officers saw appellant in the passenger seat wearing his blue shirt, and saw that his

clothing was covered with straw and burrs. Probable cause exists if the facts and circumstances known to the arresting officer would warrant a man of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. *Luckett* v. *State*, (1972) 259 Ind. 174, 179, 284 N.E.2d 738, 741. This test was met here, and appellant's arrest was properly made and evidence seized from his person properly admitted.

## II.

Appellant challenges the reasonableness and constitutionality of the warrantless search of his automobile. Subsequent to the collision on Interstate 74, the automobile was abandoned and then impounded by the police. The search was conducted at midday on August 28, while appellant was still at large. The vehicle inspected was identified as a blue Oldsmobile with Michigan license RGR 694, and thus was the same vehicle identified by Officer Baldwin shortly before his death. Certain items and documents from the car, which had been examined at the time of the search for fingerprints, were admitted into evidence at trial.

A case decided upon very similar facts to the present situation is *United States* v. *Robinson,* (D.C. Cir. 1976) 533 F.2d 578, *cert. denied,* 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976). There, an eyewitness to a bank robbery saw two suspects leaving the scene of the crime in a tan Cadillac. Two officers received a description of the car, saw it, and began following it. The officers saw the suspects abandon the car on a city street and then approached it. After the car was positively identified as the one involved in the robbery, searches were conducted both on the scene and after removal of the car to the police station. Analyzing these facts, the Court of Appeals stated, at 533 F.2d 578-79:

"There was strong probable cause to believe this was the getaway car. Bank robbers known to have been armed were at large, posing current dangers to the police and other

citizens. An immediate search of the car could well produce the information needed to speedily apprehend the culprits. Delay to obtain a warrant would have impeded a promising police investigation and conceivably provided the added time needed by the bank robbers to avoid capture altogether. *Cf. United States* v. *Ellis* 461 F.2d 962, 966 (2d Cir.), *cert. denied,* 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 115 (1972). The case is within the spirit, though not the text, of the 'hot pursuit' exception established in *Warren* v. *Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

"We therefore hold that this getaway car case entails exigent circumstances that justify a warrantless search of the car for clues as to identity or location of suspects. . . . [I]n the case of a car on the street there is both lesser expectation of privacy than in a home . . . , and the entry into a car believed on strong probable cause to be the getaway car is justified, even though the suspect is plainly not now inside, in order to get clues that will aid location and apprehension of the suspect."

As in *Robinson,* the officers in the present case had probable cause to believe that the searched automobile had been involved in a crime. It matched the description and license number radioed by Officer Baldwin before his murder. While pursuing the car on the interstate, the police officers had the above description and also saw that the driver matched the description of the suspect given to them. Thus, the action of the police which triggered the collision and abandonment of the car was lawful. *Compare State* v. *Smithers,* (1971) 256 Ind. 512, 269 N.E.2d 874.

Given probable cause, an automobile may be searched without a warrant if "the exigencies of the situation made that course imperative." *See Coolidge* v. *New Hampshire,* (1971) 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576. In the "automobile exception" cases, such as *Carroll* v. *United States,* (1925) 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and *Chambers* v. *Maroney,* (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, exigency has been found because of the mobility of vehicles stopped while moving on the open highway. *See also Isaac* v. *State,*

(1971) 257 Ind. 319, 274 N.E.2d 231. The present case, however, involved only potential mobility since the car had been abandoned. Still, we believe there were exigencies involved here since a robbery and murder suspect was at large at the time of the warrantless search. The police were in need of information in order to be able to identify and locate the suspect, as in *Robinson, supra*. In view of this situation, the search of the impounded vehicle here was reasonable and within the bounds of the Fourth Amendment. There was no error in the admission of evidence found in appellant's car.

## III.

During police questioning after his arrest, appellant stated that he had spent the night before in a barn, and that he had lost one shoe in a corn field and another in a bean field before he emerged hitch-hiking on Interstate 74. When asked what he did with the gun, appellant replied, "What gun?" He also denied any knowledge of the shooting. The officer to whom these statements were given was allowed to testify about them at trial. Appellant argues here that the admission of this evidence was erroneous and in violation of his *Miranda* rights, because the waiver form he signed inadequately advised him of his right to have an attorney present immediately. The pertinent part of this waiver form is as follows:

> You have the right to talk to an attorney before answering any questions and to have an attorney present with you during questioning. You have this same right to the advice and presence of an attorney whether you can afford to hire one or not. We have no way of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court.

We have held that such advices adequately advise a suspect of his *Miranda* rights, and are not erroneous. *Dickerson* v. *State*, (1972) 257 Ind. 562, 276 N.E.2d 845; *Jones* v. *State*, (1969) 253 Ind. 235, 252 N.E.2d 572. There is thus no error here.

## IV.

Appellant next asserts questions concerning the admissibility of the in-court identification testimony of eight eyewitnesses, five who saw the robbery at the Grab-It-Here store and three who saw the shooting of Officer Baldwin. Appellant first argues that these identifications were tainted because of a large black and white photograph of him which appeared on the front page of a local newspaper after his arrest, but before all the witnesses were shown photographic line-ups. However, we have held in *Norris* v. *State,* (1976) 265 Ind. 508, 356 N.E.2d 204, 206, that any suggestion implanted in the witness' mind by seeing a suspect's photograph in the newspaper should go to the weight, and not to the admissibility of the in-court identification.

Appellant further argues that the photographic display itself was unnecessarily suggestive, because the photograph of him stood out from the others shown to the witnesses. Appellant's photograph was smaller than the photographs of six other black males used in the display, and unlike the others had a strip of paper pasted over the bottom of it. The six other photographs were made in the Indianapolis police department; appellant Gaddis' was made in the Montgomery County jail shortly after his arrest. The officer who assembled the photographic display testified that he had pictures of Gaddis from Indianapolis, but used the Montgomery County photograph because it was more up to date. Claims in the area of photographic displays should be evaluated in light of the totality of the surrounding circumstances and with consideration of the facts of each case. *Emerson* v. *State,* (1972) 259 Ind. 399, 402, 287 N.E.2d 867, 869. Suppression of in-court identifications because of suggestive photographic procedures is required only when the displays are unnecessarily suggestive. *Stovall* v. *Denno,* (1967) 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206. We do not find that the display in the present case meets this

test. Cf. *Whitt* v. *State,* (1977) 266 Ind. 211, 361 N.E.2d 913; *Beacham* v. *State,* (1975) 166 Ind. App. 341, 336 N.E.2d 404. There was no error in permitting the in-court identifications of the eight eyewitnesses.

## V.

Appellant objected to the admission into evidence of the blue shirt he was wearing at the time of his arrest. Beyond claiming that there was no probable cause for his arrest, which claim we have dismissed in issue I, *supra,* appellant argues that the chain of custody of the blue shirt has not been properly established. The shirt was positively identified at trial by both a witness to the robbery at the Grab-It-Here store and by the officer who arrested appellant Gaddis. We feel that this testimony sufficiently established chain of custody. This exhibit was neither small nor one which had physical characteristics fungible in nature and similar to substances familiar to people in their daily lives. Thus, the identification requirements with respect to this exhibit are not as stringent as the requirements for exhibits with the above characteristics, and a mere possibility that the evidence could have been tampered with does not make it inadmissible. *Loza* v. *State,* (1975) 263 Ind. 124, 325 N.E.2d 173; *Graham* v. *State,* (1970) 253 Ind. 525, 255 N.E.2d 652. Appellant's blue shirt was properly admitted.

## VI.

Appellant correctly asserts that he was given two sentences for the same killing, life imprisonment for his conviction of felony murder and death for first-degree murder of a police officer. One of the sentences must thus be vacated. *Franks* v. *State,* (1975) 262 Ind. 649, 323 N.E.2d 221. We vacate the sentence of death, since appellant also correctly asserts the unconstitutionality of Ind. Code § 35-13-4-1 (Burns 1975), under which his sentence was im-

posed. *Fair* v. *State*, (1977) 266 Ind. 380, 364 N.E.2d 1007; *French* v. *State*, (1977) 266 Ind. 276, 362 N.E.2d 834.

The case is remanded with instructions to vacate appellant's death sentence, and otherwise affirmed.

Givan, C.J., Hunter, J., concur; Prentice, J., concurs in result; DeBruler, J., concurs with opinion in which Prentice, J., concurs.

CONCURRING OPINION

DeBruler, J.—For the reasons stated in my separate opinion in *Dickerson* v. *State*, (1972) 257 Ind. 562, 276 N.E.2d 845, a case in which this Court sanctioned warnings almost identical to those now before us, I cannot agree that the warnings given appellant were adequate. These type warnings are defective in that they tell the indigent accused to talk now without a lawyer, or talk after an indeterminate period of custody with a lawyer. So reasonably understood this warning impermissibly impels the choice to speak now without benefit of counsel. However, under the circumstances in this case, the erroneous admission of appellant's statements was harmless beyond a reasonable doubt. *Greer* v. *State*, (1969) 252 Ind. 20, 245 N.E.2d 158; *Bauer* v. *State*, (1973) 157 Ind. App. 400, 300 N.E.2d 364. Under the total evidence in this case, there is no likelihood that the jury used appellant's statements in reaching that degree of certainty necessary to their verdict.

This issue has not been considered by this Court for some years, and its presence here underscores its persistence. Judge Spaeth of the Pennsylvania Superior Court pointed out recently in dissent in the case of *Commonwealth* v. *Robert Johnson*, (1977) 247 Pa. Super. 208, 372 A.2d 11, 14, that a police officer in that state cannot truthfully tell an arrestee that there is no way of giving him a lawyer prior to going to court for in that state a public defender is available on an around-the-clock basis to any indigent suspect who invokes

the right to counsel. Where such system exists, the police need only provide the suspect with a telephone and the telephone number of the public defender. Given the sacred constitutional right of suspects to counsel prior to interrogation, and the compelling interest of the prosecution in early interrogation that system would appear to be preferable to our own and its adoption would render wasteful litigation of this type *passe*.

Prentice, J., concurs.

NOTE.—Reported at 368 N.E.2d 244.