STANLEY LEROY JOHNSON *v.* STATE OF INDIANA.

[No. 671S187. Filed January 28, 1972.]

*John R. Brant, II*, Public Defender, *Harlan, Schussler & Keller*, of counsel, of Richmond, for appellant.

*Theodore L. Sendak*, Attorney General, *A. Frank Gleaves, III*, Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Stanley Leroy Johnson, appellant (defendant below), from a conviction for Assault and Battery with Intent to Gratify Sexual Desires, pursuant to IC 1971, 35-1-54-4 (Ind. Ann. Stat. § 10-403 [1971 Supp.]), which reads in part as follows:

> "Whoever in a rude, insolent or angry manner, unlawfully touches another, is guilty of assault and battery . . . [W]henever in the commission of the offense any person removes, tears, unbuttons, unfastens, or attempts to remove, tear, unbutton or unfasten any clothing of any child who has attained his or her twelfth (12) birthday but has not attained his or her seventeenth (17) birthday, or fondles or caresses the body or any part thereof of such child with the intent to gratify sexual desires or appetites of the offending person or, under circumstances which frighten, excite, or tend to frighten or excite such child, the punishment shall be imprisonment in the Indiana state prison for a period of time of not less than one (1) year nor more than five (5) years . . . "

Appellant was charged by affidavit to which he pleaded not guilty and trial by jury commenced on January 11, 1971. The jury returned a verdict of guilty and on January 21, 1971, appellant was sentenced to the Indiana Reformatory for not less than one (1) nor more than five (5) years. A motion to correct errors was filed which was overruled and this appeal followed.

Appellant asserts two main contentions of error. First, he claims the extra-judicial pretrial identifications of appellant were so unnecessarily suggestive and conducive to irreparable misidentification that appellant was denied due process of law. In turn he claims these pretrial identifications tainted the in-court identification, contending the latter had no independent source. Secondly, appellant contends the State did not sustain its burden of proving that it was appellant who perpetrated the assault.

The facts in this case are generally as follows. On the evening of September 5, 1970, in Richmond, Indiana, Darla Rosier, a twelve (12) year old girl, was engaged to babysit

for the children of Evelyn Soper. Evelyn Soper was living with appellant's mother and sister whose home was located about a block and a half from the Rosier home. Evelyn Soper and appellant were not married but were acquainted to the extent that Evelyn's children called the appellant "Daddy."

Darla put the children to bed around 10:00 P.M. and lay down on the bed with two of the little girls. At that time a lamp above the bed and a light in the living room were on. The reason for employing Darla that evening was that Evelyn Soper and appellant's mother and sister were seeking to locate appellant who was A.W.O.L. from the Marine Corps at the time. They located him in a bar in Eaton, Ohio, where he had been drinking beer much of the day, and his sister went in and talked with appellant for a few minutes. He then departed in his car heading west. After driving around a bit in Eaton, Evelyn and appellants' mother and sister headed back toward Richmond at a slow speed. They were delayed twice on their return. Once they doubled back a distance to check on a parked car which they though might be the appellant's, and then they stopped at a service station for five to ten minutes.

Shortly before the women arrived home, Darla had been awakened when she found a man lying on her, kissing her, and attempting to pull up her blouse and pull down her pants. Darla screamed for Gary, one of the boys sleeping in the next room. The attacker then struck Darla and ran from the room. The bedroom light had been turned off so that Darla had been unable to get a good look at him while he was on top of her but as he went through the door into the light of the living room she was able to get a good look at the side of his face and noted that he had blond hair. As the attacker dashed through the lighted living room, Gary, who had come out of his bedroom, called out "Daddy."

Two boys, one of whom was Darla's step-brother, had been in a nearby yard and had seen appellant's car go by at ap-

proximately the time of the assault. They thought it had stopped close to the home where Darla was baby-sitting. A few minutes later the car came back down the street with its headlights off and as it came under a street light the step-brother could see that appellant was driving.

Darla's parents arrived after being summoned by one of the boys and within a few minutes the three women arrived as well. Evelyn Soper exclaimed that if it was appellant who did it she would kill him. Darla was asked if appellant had been her attacker and she said that she didn't think so because she had remembered appellant as having darker hair. A police officer soon arrived and when he asked her if appellant had attacked her she stated she did not think so but she was not sure.

Later during the daylight hours of September 6, 1970, the police came to the home of appellant's mother seeking to arrest appellant for being A.W.O.L. Appellant was present at his mothers' home at that time and when the police arrived he fled out the back door with the police giving chase. Darla's mother, who was in her yard at the time, noticed appellant running from the police and called Darla's attention to him. Her mother asked Darla if that were the man and she said "yes." The police apprehended appellant and placed him in a squad car. They then drove past Darla's home back to the home of appellant's mother. When Darla saw him this time she stated at trial that she was then sure that appellant was her attacker. Darla's father then took Darla and drove down to the home of appellant's mother. Apparently, Darla's father made some threatening remarks to appellant. Darla tried to stop this and urged her father to get back into the car. No exchange whatsoever took place between the police and Darla at this time.

The one identification procedure conducted by the police was through the use of photographs. September 9, 1970, a detective sergeant of the Richmond Police Department visited

Darla's home. He talked with Darla alone and showed her photographs of five men including appellant. Each mans' photograph appeared only once. All were known perpetrators of either assault or sex crimes and all identifying information one the photographs had been covered. The officer handed Darla all the photographs and, in his words, "asked her to look through the photographs to see if any of the persons that she was looking at was the one that had assaulted her." She looked through them and handed the officer the photograph of appellant stating this was the man who had assaulted her.

In the case of *Mylinski* v. *State* (1971), 257 Ind. 453, 275 N. E. 2d 544, 546, this Court quoted *Simmons* v. *United States* (1968), 390 U. S. 377, 384:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that *each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.* This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U. S. 293, 301-302, 87 S. Ct. 1967, 1972-1973, 18 L. Ed. 2d 1199, 1206, and with decisions of other courts on the question of identification by photographs." (our emphasis)

There was the opportunity at trial to conduct extensive cross-examination of both the officer and the victim concern-

ing this identification, and defense counsel utilized his opportunity. Upon reviewing the procedure used in the instant case, we cannot say it "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The method and language used by the officer in no way indicated that he desired any certain result. Upon viewing the photographs contained in the transcript we note that no great age differential is apparent among the five men, nor does appellant's complexion or hair color seem markedly different from the others. In fact, there is nothing which would make appellant's photograph stand out in any way from the others. Although the use of more than five photographs would have been highly desirable we cannot say that this alone made the procedure overly suggestive.

Since the extra-judicial identification was not improper it follows that the in-court identification could not then be considered tainted. In addition, the victim had previously known the appellant and had the opportunity to get a look at her assailant when she was assaulted. Her in-court identification was clearly independent of her extra-judicial photographic identification. There is thus no merit to appellant's contention that this identification denied him due process of law.

The in-person confrontation which took place between the appellant and the victim occurred when, as noted above, Darla saw the appellant as the police were in the process of arresting him on the A.W.O.L. charge. The police in no way instigated this confrontation and it was merely happenstance that it occurred. These circumstances are in no way a basis for excluding the victim's in-court identification but go to the credibility of the witness' identification and the weight to be accorded it by the jury.

This leads to appellant's remaining contention that the evidence was insufficient to prove beyond a reasonable doubt

that appellant was the assailant. Appellant does not question that the evidence was sufficient to prove that the crime was committed and does not not question that all the elements of the crime were proven. The question is only whether appellant was the man who committed the crime. In considering this contention this Court will not weigh the evidence nor determine the credibility of witnesses. Only that evidence most favorable to the State and the reasonable inferences to be drawn therefrom will be considered. As long as there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt the verdict will not be disturbed. *Jackson* v. *State* (1971), 257 Ind. 477, 275 N. E. 2d 538; *Valentine* v. *State* (1971), 257 Ind. 197, 273 N. E. 2d 543; *Thomas* v. *State* (1971), 256 Ind. 309, 268 N. E. 2d 609.

It was demonstrated that suggestive influences were present which possibly could have had an effect on the victim's identification. However, when the victim saw the appellant as he rode by in a police car, she was then "sure" the appellant had been her assailant. The victim, who had known the appellant previously, said the reason she was not at first sure it was appellant who had attacked her was because she had remembered his hair as being darker than that of her assailant. When she saw the appellant the afternoon following the incident she noted that his hair appeared to be bleached and was now blond, the same color as her assailant.

In addition, other evidence was presented which substantiated the determination of appellant as the assailant. Two boys had seen appellant's car go by at approximately the time the assault occurred and stop close to the house where the victim was babysitting. They then saw the car coming back down the street a few minutes later with no headlights on and as it passed under a street light one of them was able to see that the appellant was the driver. Also, as the attacker fled from the house through the lighted living room, one of Evelyn Soper's children who had come into the living room

called "Daddy," a name which all her children used in referring to the appellant. From all the evidence it is clear that there was sufficient evidence upon which to base a conviction.

For all the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

DeBruler, Givan and Prentice, JJ., concur.

Arterburn, C. J., concurs in result with opinion.

## OPINION CONCURRING IN RESULT

ARTERBURN, C.J.—I concur only in the resulting decision, in this case, for the reason that I do not accept the principle that the pre-trial identification of a defendant may be tainted by suggestions made, etc. To me, we are invading the province of the jury in determining the weight to be given evidence of identification or the credibility of the witness making the identification. Cross-examination is the vehicle the law grants to weaken identification which occurs through suggestive means or any other "improper means".

There is no logical argument presented in the majority opinion why cross-examination did not and could not have brought out any weakness in the identification of the appellant. Again, I say that this court should not invade the province of the jury in determining the issue of identification. This court should not take away from the jury its constitutional duty in such a case, on a theory that some evidence may be "tainted" because someone suggested or insisted upon the identification of the defendant by a witness. Article 1, Sec. 19 of the Constitution of Indiana states:

"In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

NOTE.—Reported in 277 N. E. 2d 791.