WALTER EVERETT JONES *v.* STATE OF INDIANA.

[No. 1-1072A85. Filed March 19, 1973.]

538

*Gerald E. Surface, Jr.*, Public Defender, of Richmond, for appellant.

*Theodore L. Sendak*, Attorney General, *Stephen J. Cuthbert*, Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant was charged by affidavit with the crime of armed robbery. He was arrested, arraigned and entered a plea of not guilty. This was followed by several pre-trial motions of the defendant-appellant, one of which was a motion to suppress pre-trial identification evidence and on which evidence was heard and the court's refusal to suppress pre-trial identification evidence is one of the errors relied upon herein.

The case was tried to a jury; the defendant-appellant was found guilty as charged and was sentenced and committed to the custody of the Indiana Department of Corrections for a determinate period of ten years.

The motion to correct errors was timely filed and the same is, in brief, as follows, to-wit:

1. Whether the pre-trial identifications were so impermissibly suggestive that appellant was denied due process of law.

2. Whether the in-court identifications were tainted by the impermissibly suggestive pre-trial identification.

3. Whether the trial court erred in overruling appellant's motion for a directed verdict.

4. Whether the repeated remarks of the Prosecuting Attorney, during closing argument, in regards to appellant's failure to testify denied appellant due process of law.

5. Whether the Prosecuting Attorney's conduct during clos-

ing argument was prejudicial and inflamed the jury against the appellant.

6. Whether the conviction of appellant was based upon insufficient evidence.

7. Whether the conviction of appellant was contrary to law.

The facts of the care are that on December 17, 1971, at 1:30 P.M., Janice Harman, assistant cashier at Ayr-Way, Incorporated, Richmond, Wayne County, Indiana, was robbed at gunpoint by a man who took approximately $637.00. This robbery was witnessed by Sandy Lewsader, also an employee of Ayr-Way.

The money was put in what Harman thought was a paper bag and what Lewsader thought was a cloth bag and the hold-up man hurriedly left the store and was seen by a maintenance man, Roy Isch, who was working in the location of the Gateway Shopping Center on said day and hour and at about 1:30 P.M. saw a man running past him "like mad"; the man jumped into a car bearing an Ohio license plate, number K-7609, which number Mr. Isch wrote down. This man was carrying a brown bag in his right hand. Mr. Isch saw no weapon.

At the trial of the cause Mr. Isch could not positively identify the defendant-appellant as being the man he saw running on the day of the alleged crime. However, a check with Ohio authorities revealed that the licensed number taken from the car had been issued by the State of Ohio to Walter E. Jones. Jones had been arrested in Columbus, Ohio, and returned to Richmond to stand trial.

Detective Kolentus of the Richmond Police Department testified his investigation led to the name of the suspect, Walter Everett Jones. Detective Kolentus obtained Jones' photograph from Ohio authorities and sought similar photographs from the Richmond files for identification purposes, of which he received five.

Detective Kolentus testified that he was looking for certain physical appearances when he selected the photographs, such as dark rim glasses, long, black unkempt hair, acne scars or pockmarks on the face, and a picture of a man approximately in his thirties. His description of the subject was given to him by Janice Harman, the victim.

Janice Harman looked at all six of the pictures and without being advised or prompted by any police officer, promptly picked out and identified the photograph of defendant-appellant.

The same routine was followed by handing the pictures to Sandy Lewsader, who also promptly identified the defendant-appellant as being the man that she saw commit the hold up in the Ayr-Way store.

We shall, pursuant to Rule AP. 8.3(A)(7), treat specifications 1 and 2 as one; 4 and 5 as one, and 6 and 7 as one.

The photographs from the Richmond Police Department had what we assume to be an identification of some kind, either name or number, blocked out with a blue strip of paper at the top. The photograph of the defendant-appellant had a strip of the same kind of paper apparently blocking something out at the bottom of the photo. The photo of the defendant-appellant was slightly larger than the other photos, but was noticeable only after having that called to one's attention.

Each of the photos showed men with glasses, all with shell rims except one, and one who was slightly balding, others with dark, more or less bushy hair, but none with long hair, and the defendant-appellant's photo showed a short cropped head of hair. Defendant-appellant contends that the pre-trial identifications were so impermissibly suggestive that he was denied due process. We do not weigh the evidence, but in observing the photographs and considering the evidence most favorable to the State, as is our duty, we cannot, using the words of Justice Hunter in

*Johnson* v. *State* (1972), 257 Ind. 634, 277 N.E.2d 791, 794, say the pre-trial identification:

". . . 'was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' . . ."

The United States Supreme Court, in the case of *Simmons* v. *United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247, has discussed this area extensively as follows:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. . . ."

No police officer or other person was shown by the record to have told or even suggested the identity of the defendant-appellant to either of the female witnesses who examined the photographs.

The case of *Johnson* v. *State, supra,* in our opinion, adequately sets to rest the second specification of error, wherein it is claimed that the in-court identifications were tainted by the impermissibly suggestive pre-trial identifications.

Defendant-appellant's argument to bear this out is that because the witnesses had identified the photographs and knew that it was necessary for the defendant to be in court for

his trial and would be at the counsel table with his counsel that their identification of him in court was tainted from that knowledge and the photographs that they had seen. He also urges that just before trial police officers again showed the female witnesses who identified the appellant in open court the photographs. However, the record does not disclose any impropriety or undue influence on the part of the police officers or the Prosecuting Attorney.

Again quoting from *Johnson* v. *State, supra:*

> "Since the extra-judicial identification was not improper it follows that the in-court identification could not then be considered tainted. . . . There is thus no merit to appellant's contention that this identification denied him due process of law."

In our opinion, the pre-trial identification of photographs is in no way a basis for excluding the in-court identification of the hold up victim or Ms. Lewsader, who was working in the store and observed the hold up, but such goes only to the credibility of the witnesses' identification and the weight to be accorded the respective evidence of each by the jury.

The case of *Nelson* v. *State* (1972), 259 Ind. 339, 287 N.E.2d 336, 339, written by Justice Prentice of our Supreme Court, states:

> "A directed verdict of acquittal can only be given where there is a total lack of evidence on some essential issue, or where there is no conflict in the evidence and it is susceptible of but one inference, and that inference is in favor of the accused. . . ."

This being the law in Indiana, it is not necessary for us to elaborate further as to specification 3, which we now hold is without merit and there was adequate evidence for the case to go to the jury.

Appellant next contends that his Fifth Amendment rights under the United States Constitution regarding self incrimina-

tion and his rights under Section 14 of the Bill of Rights of the Indiana Constitution were violated by remarks made during final argument by the Prosecuting Attorney. Appellant contends that these remarks referred to the fact that the appellant did not testify or present evidence. The first remark objected to by appellant is as follows:

> Prosecuting Attorney: "Now, also, let me point out that defense counsel had the opportunity during this trial to attach (sic) the in-court identification."

Objection was made to this statement by defense counsel, but was overruled by the court. We do not see that this statement prejudiced the defendant by referring to his failure to testify. This statement speaks only to the fact that the identification procedure discussed hereinabove, which was a major issue in the trial, was susceptible to cross examination by defense counsel. This court has recently stated, in the case of *Palmer* v. *State* (1972), 153 Ind. App. 648, 288 N.E.2d 739, that the trial court has wide discretion in determining whether the conduct of counsel is prejudicial. A mistrial will only be ordered by a showing of abuse of that discretion. We do not find any abuse of discretion in the overruling of defendant's counsel's objection to the above quoted statement. See, also, *Ervin* v. *State* (1972), 154 Ind. App. 89, 289 N.E.2d 131.

The second statement objected to is as follows:

> Prosecuting Attorney: "And, finally, ladies and gentlemen, defense counsel still has not explained to you the fact that the defendant's automobile was at the scene of this crime."

Objection was made by defense counsel and sustained. Additionally, the trial judge immediately admonished the jury to disregard the above quoted remark and to not consider the statement in their deliberations. Again, we are hard pressed to find a reference in the above

quoted statement to the failure of the defendant to testify. Even if such an inference could be made and prejudice found, the trial court specifically instructed the jury to disregard the statement and this action would cure the error. We do not find that the second statement quoted above was prejudicial and, further, it was sufficient to cure any possible defect when the court admonished the jury to disregard the statement. *McCulley* v. *State* (1971), 257 Ind. 135, 272 N.E.2d 613.

Appellant also argues that an "experiment" performed by the Prosecuting Attorney during final argument was prejudicial to the defendant. This "experiment" consisted of the Prosecuting Attorney asking the jury to imagine that his finger, which he was pointing at the jury, was a gun and invited the jury to consider the cashier's position and thought process as she stared at the "gun." Appellant argues that this "experiment" should not have been allowed, since no fire arm had been admitted into evidence and there was conflicting evidence as to whether a fire arm was, in fact, used in the alleged hold up. However, the evidence most favorable to the State discloses that a fire arm was used during the hold up. The appellant contends that this alleged prejudicial experiment should be grounds for reversal and cites cases in his brief where conduct by prosecuting attorneys was held to be prejudicial.

We do not find prejudice in this "experiment." There was evidence that a gun was used in the hold up and we fail to see how defendant was prejudiced by this "experiment." As stated above, conduct of counsel during the trial is largely within the discretion of the trial judge. Objection was made to this "experiment" and overruled by the court. Absent a showing of an abuse of discretion, we must affirm the trial court's ruling on the objection. *Palmer* v. *State, supra.*

Appellant next contends that the verdict was not supported by sufficient evidence on all elements of the offense charged.

Appellant contends that there is conflicting testimony on various aspects of the case, including duration of the holdup, the type of bag alleged to have been carried by the defendant, the presence of a pistol, the age of the defendant, and the identity of the defendant. This court will not weigh the evidence and on appeal will consider only the evidence most favorable to the State. *Yeley* v. *State* (1972), 153 Ind. App. 133, 286 N.E.2d 183.

Neither will this court consider the weight of testimony or credibilty of witnesses. *McMinoway* v. *State* (1972), Ind. App., 283 N.E.2d 553. This court will only look to see if there was substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt. Finding such evidence, the verdict of the jury will not be disturbed. *Taylor* v. *State* (1972), 259 Ind. 25, 284 N.E.2d 775.

The evidence in this case was sufficient to establish every material element of the crime beyond a reasonable doubt and we find no grounds for reversal.

Finally, the appellant contends that the verdict was contrary to law. For the reasons set out above, we find that there was sufficient evidence, no error was committed by the trial court, and the decision is not contrary to law. *Pavach* v. *State* (1971), 149 Ind. App. 293, 271 N.E.2d 896.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.