MARVIN CAYWOOD *v.* STATE OF INDIANA.

[No. 1-274A25. Filed June 10, 1974.]

*Gerald E. Surface, Jr.,* Public Defender, of Richmond, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant was tried by a jury on an amended affidavit charging him with commission of a crime while armed with a deadly weapon (to-wit, armed robbery) under IC 1971, 35-12-1-1, Ind. Ann. Stat. § 10-4709 (Burns, 1956). The jury returned its verdict of guilty of the included offense of robbery and on which verdict the court entered its judgment committing defendant-appellant to the Indiana Department of Corrections for not less than 10 years nor more than 25 years.

Defendant-appellant timely filed his motion to correct errors which motion was overruled by the court.

Four issues are presented for our consideration, each of which will be hereinafter treated.

The facts of this case are, briefly, that on June 7, 1973, at about 12:45 A.M.. two men entered the Mr. Pizza restaurant

in Richmond, Indiana. They conversed with three patrons who were dining and one of the patrons, while conversing with the defendant-appellant, determined that the defendant-appellant was armed with a revolver. In fact, they had some conversation about it.

While the three restaurant customers conversed with defendant-appellant and one Ronald Bledsoe who had entered the restaurant with him, defendant-appellant left the dining section of the restaurant and went over to the cashier's counter where Mrs. Gloria Jean Grimes was working and demanded money at gun point. She turned over to him something over $300.00 from the cash register and a money envelope. Defendant-appellant then went back, told Mr. Bledsoe it was time to leave, and they left together. He remarked to Mrs. Grimes as they went out the door that she had a good look at them. Following this, Mrs. Grimes fainted.

On June 9, 1973, Detective Irvine of the Richmond Police Department presented Mrs. Grimes with 9 photographs to be viewed by her and at this time she identified defendant-appellant as the man who had held her up on June 7th. Mrs. Grimes was again shown the pictures on June 23rd, 1973, and asked if she could once more identify the individual who robbed the Mr. Pizza restaurant where she was employed and again she identified defendant-appellant by one of the 9 photographs submitted. Mrs. Grimes testified that during the identification procedure there was no conversation with her at all and there were no suggestions made as to her previous examination of the photographs.

A witness, Randall Newman, who was one of the customers with whom the two men conversed, testified that on June 8, 1973, he positively identified defendant's picture out of numerous photographs presented him by the police. He further testified the only conversation he had with the police during the identification procedure was whether or not he could identify anyone in the pictures as the hold up man.

Ben Wolfenbarger, another customer, identified the picture of one Ronald Bledsoe, but clarified that identification by stating that he thought the one identified was not the individual who was armed, but his accomplice. In court Wolfenbarger made a positive identification of defendant-appellant.

Before the trial on the merits defendant-appellant had filed a motion to suppress the pre-trial identification evidence, on which hearing was had and the motion was overruled.

Defendant-appellant contends that the pre-trial identifications were so impermissibly suggestive that appellant was denied due process of law.

Anna McDaniel, an employee working in the restaurant, saw defendant-appellant put the money envelope in his pocket but was unable in the trial of the cause to identify defendant-appellant but did identify Mr. Bledsoe by his photograph.

Further, in the trial of the cause, witnesses Mrs. Gloria Jean Grimes, Mr. Randall Newman and Mr. Ben Wolfenbarger each made a positive identification of defendant-appellant as being in the restaurant on June 7, 1973 and having had the gun and robbed the Mr. Pizza by holding the gun on Mrs. Grimes. There is no evidence in the record that would indicate any impermissibly suggestive conduct on the part of the police during the pre-trial identification procedure or at any other time during the proceedings.

Defendant-appellant contends that the pre-trial identification procedures violated the standards as set out in *Simmons* v. *United States* (1968), 390 U.S. 377, 88 S.Ct. 967 and *Johnson* v. *State* (1972), 257 Ind. 634, 277 N.E.2d 791, in that some of the photos were of darker subjects, thereby causing defendant to stand out and that conflicting testimony as to the number of photographs shown the witnesses caused uncertainty which resulted in prejudice to the defendant-appellant. The evidence disclosed that there were first handed the witnesses 9 photographs and one witness had 10 and another approximately 25.

The State contends that there was absolutely no evidence of impermissibly suggestive conduct by the police during the pre-trial identification procedure. We are unable to determine from the record that there was any irregularity on the part of the police and find there was none. Conversely, the in-court identifications were, under the totality of the circumstances, sufficiently independent of the pre-trial identifications so as not to be besmirched by the latter.

In *Johnson* v. *State, supra,* our Supreme Court discussed the standards in reviewing the pre-trial photograph identification procedure and quoted from *Simmons* v. *United States, supra,* as follows, to-wit:

". . . [E]ach case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 1972-1973, 18 L.Ed.2d 1199, 1206, and with decisions of other courts on the question of identification by photograph."

In the case at bar defendant-appellant relies strongly on skin coloring as the prejudicial factor. He contends that *Johnson, supra,* requires that there not be a "great age differential among the suspects, nor must there be difference in the complexion or hair color of the suspects." On this subject, *Johnson, supra,* had the following to say:

"Upon viewing the photographs contained in the transcript we note that no great age differential is apparent among the five men, nor does appellant's complexion or hair color seem *markedly different* from the others." (Emphasis added.)

We are, therefore of the opinion that appellant's argument that the pre-trial photograph identifications were impermissibly suggestive due to difference of skin coloring will succeed only if there is a *marked* difference in the color of defendant as compared to the others

which would "give rise to a very substantial likelihood of irreparable misidentification." A close examination of the 9 photographs viewed by the witnesses reveals that they were in a moderate range of ages, were Negroes and some of which were of a lighter complexion than the others, but no marked difference was revealed with which appellant could avail himself on this issue.

Appellant next argues that the uncertainty resulting from the number of photographs prejudiced him. In such case appellant had the responsibility to affirmatively show that the error complained of was prejudicial to his cause. *Turner* v. *State* (1972), 259 Ind. 344, 287 N.E.2d 339, 342. There is no set number of photographs that must or must not be shown a witness in a pre-trial identification. Absent a showing of the defendant how the inexact number of photographs prejudiced his cause, it can only be concluded that he failed the requisite burden needed to reverse the jury's conviction. *Turner* v. *State, supra*.

The second issue is whether the sentence of 10 to 25 years was improper and denied appellant due process of law. It appears that the crux of appellant's argument is that while a conviction of robbery under IC 1971, 35-13-4-6, Ind. Ann. Stat. § 10-4101 (Burns 1956) can result in an indeterminate sentence of between 10 and 25 years, it is *possible* for one convicted of armed robbery under IC 1971, 35-12-1-1, Ind. Ann. Stat. § 10-4709 (Burns 1956) to be sentenced to a determinate sentence less than that provided for in a robbery conviction. Appellant contends as a consequence of this incongruity, his sentence is improper and violative of his right to due process.

In *Boyd* v. *State* (1971), 257 Ind. 546, 275 N.E.2d 797, 801, Justice Hunter was faced with an analogous situation and concluded as follows:

"The statute in question refers only to the penalty imposed upon the said felony. Thus, we are clearly concerned only

with the duration of the sentence and not with the term of imprisonment that may be served thereunder, this being determined by subsequent events." See, also, *Barbee* v. *State* (1973), 156 Ind. App. 431, 296 N.E.2d 884.

In *Dotson* v. *State* (1972), 258 Ind. 581, 282 N.E.2d 812, our Supreme Court said "the maximum severity of the penalty" is the device used to measure whether the penalty in one crime is greater than that of another.

In the present case, the *maximum penalty* for robbery is 25 years, while that for armed robbery is 30 years. Since the appellant's indeterminate sentence of 10 to 25 years falls within the maximum sentence for armed robbery it was in no way improper and in no way violated his right to due process.

Issues 3 and 4, being that the conviction of appellant was based on insufficient evidence and was contrary to law, will be grouped, pursuant to Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7).

Appellant contends that "there exists reasonable doubt regarding the identification in the fact that one eyewitness was unable to say that he was the robber at the trial."

The State, in answer to this contention, urges that the in-court identification by appellant by three witnesses was sufficient to establish his identity as the robber.

It appears that the sole issue presented is not whether the in-court identifications by the witnesses were sufficiently independent of the allegedly erroneous pre-trial photograph procedures but simply whether the testimony was sufficient to identify the defendant as one of the men who committed the robbery.

This court, when determining whether there has been presented sufficient evidence to warrant a conviction will consider only that evidence most favorable to the State with all logical and reasonable inferences to be drawn therefrom. Likewise, the evidence will not

be weighed nor the credibility of witnesses determined. *Martin* v. *State* (1973), 157 Ind. App. 465, 300 N.E.2d 671, 673.

The facts in the present case reveal that Gloria Grimes, Ben Wolfenbarger, and Randall Newman all had the opportunity to observe the hold up men at close range for a considerable length of time. The lighting was excellent and the men's faces were not obscured. At trial, the three witnesses conclusively testified that defendant was the hold up man who brandished a revolver.

The jury, as trier of fact, was free to weigh the credibility of those witnesses and give their identification whatever weight they felt appropriate. *Alexander* v. *State* (1973), 158 Ind. App. 698, 304 N.E.2d 329. It has heretofore been determined that the pre-trial identifications were not impermissibly suggestive, and inasmuch as defendant does not argue that the in-court identifications were in any way tainted, then no method exists by which to disturb the jury's finding other than by a reweighing of the witnesses' testimony. As this is not a function of a reviewing court, it must be concluded that the identification evidence was of sufficient probative value to enable the trier of fact to infer beyond a reasonable doubt that defendant-appellant was guilty as charged. *Rhodes* v. *State* (1972), 154 Ind. App. 594, 290 N.E.2d 504.

We are of the opinion that the judgment was based on sufficient evidence and was not contrary to law.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 311 N.E.2d 845.