JAMES J. BEACHAM *v.* STATE OF INDIANA.

[No. 1-674A98. Filed October 28, 1975.]

*Harriette Bailey Conn (Mrs.)*, Public Defender of Indiana, *Stephen Brown*, Deputy Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General, *Robert M. Lingenfelter*, Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant Beacham was charged with the crime of armed robbery.[1] Pauper counsel was appointed for Beacham after his arrest which counsel he later fired. He then asked permission to try his own case. The record discloses that arraignment was waived and a plea of not guilty was entered. The record further discloses that a second pauper attorney was appointed and that counsel acted mostly in an advisory capacity, and that defendant-appellant for the most part acted as his own counsel.

The case was submitted to a jury. Beacham was convicted and was sentenced to a period of not less than ten nor more than twenty-five years.

## ISSUES PRESENTED:

The issues we are required to pass upon here are:

1. Whether the pre-trial identification was so impermissibly suggestive that appellant was denied due process of law.

2. Whether the identification of appellant at trial was tainted by the impermissibly suggestive pre-trial identification.

3. Whether the court's failure to grant Beacham's motion for mistrial after objectionable comments were made by a witness for the prosecution constituted reversible error.

---

1. IC 1971, 35-12-1-1, Ind. Ann. Stat. Sec. 10-4709 (Burns 1956 Repl.).

Issues 1 and 2 will be treated together, pursuant to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

## FACTS OF THE CASE:

On October 19, 1972, Beacham entered Room 1011 of Cromwell Hall at Indiana State University at about 9:30 P.M., where he visited the tenants, Bruce Patt and Carl Mitchell. Shortly after entry Beacham excused himself to leave the room and then returned accompanied by two other individuals who were almost instantly followed into the room by two other young men, namely, Bobby Swift and Steve Hollingsworth, friends of Patt and Mitchell.

After a short conversation between these men, Beacham and the two friends he had picked up (all three were young Negroes), on order of one to "pull their pieces" robbed Bruce Patt of approximately $200.00. In so doing two of the three were armed with knives and the third man was armed with a gray pistol.

After the robbery the three Negroes left the room, warning the victims not to contact the police under threat of being killed.

About 10 to 10:30 the University police were summoned. Detective Donald Tryon of that department, with 20 years service as a Terre Haute police officer and detective, took charge of the investigation, interviewed Patt and Mitchell and received a description of the hold-up men.

Carl L. Mitchell recognized Beacham during the robbery, as he had been in school and had seen Beacham but could not recall his name on the night of the robbery. Patt, Mitchell's roommate, also knew Beacham.

Hollingsworth was a student and knew Beacham, having been in school with him and having seen him there for more than a year, and told the police he was one of the three robbers.

James Kennedy, a student, observed three Negroes at the lower floor of the building and overheard them talking about being in a big hurry to get to the tenth floor. He did not know any of them personally but later recognized Beacham as one of the three he had seen just before the robbery.

## ISSUES 1 AND 2:

Detective Tryon testified he had five pictures of Negro students. They appeared to be about the age of Beacham, who, as above stated, had been a student at Indana State University. These photos were University photos and had a name and number at the bottom of the same. Detective Tryon secured a photo of Beacham from the Terre Haute Police Department which had at the bottom of the same the legend identifying the Terre Haute Police Department, with a number and a date on the same. There was a front view and a side view and a height chart just back of Beacham. The evidence was that all these photos were laid side by side and all identification on each of them was covered over with a white paper and could not be seen. The only thing unusual about any of the photos was a height chart just back of Beacham and there was a front and side view of him.

## DISCUSSION:

Beacham vigorously objected to the testimony relating to the identification on the grounds that the photographs, because of their nature, were so impermissibly suggestive as to give rise to the very substantial likelihood or irreparable misidentification and the subsequent eye witness identification at trial should be set aside or suppressed and that failure to do so denied him due process.

The photographs were admitted into evidence during the testimony of James Kennedy when evidence pertaining to the admission of the same was heard *in the absence of the jury.* The record discloses that there was no request to exhibit the photographs to the jury and they were not so exhibited.

Beacham relies on the case of *Johnson* v. *State* (1972), 257 Ind. 634, 277 N.E.2d 791. In *Johnson, supra,* Justice Hunter discussed the matter of mis-identification and at page 794 said:

" '. . . we hold that *each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.* This standard accords with our resolution of a similar issue in *Stovall* v. *Denno,* 388 U.S. 293, 301-302, 87 S.Ct. 1967, 1972-1973, 18 L.Ed.2d 1199, 1206, and with decisions of other courts on the question of identification by photograph.' (Our emphasis)

\* \* \*

". . . Upon reviewing the procedure used in the instant case, we cannot say it 'was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' The method and language used by the officer in no way indicated that he desired any certain result. Upon viewing the photographs contained in the transcript we note that no great age differential is apparent among the five men, nor does appellant's complexion or hair color seem markedly different from the others. . . ."

In *Jones* v. *State* (1973), 155 Ind. App. 536, 293 N.E.2d 545, in discussing the claim that the pre-trial identifications were so impermissibly suggestive that the defendant was denied due process, this court said:

". . . We do not weigh the evidence, but in observing the photographs and considering the evidence most favorable to the State, as is our duty, we cannot, using the words of Justice Hunter in *Johnson* v. *State* (1972), [257] Ind. [634], 277 N.E.2d 791, 794, say the pre-trial identification:

'. . . was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' . . ."

This court in *Jones* further quoted from the United States Supreme Court case of *Simmons* v. *United States,* 390 U.S.

377, 88 S.Ct. 967, 19 L.Ed.2d 1247, which discussed this area extensively as follows:

> " 'Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. . . .' "

It must be remembered that witnesses Hollingsworth, Mitchell, Swift and Patt were all in the room at the time of the armed robbery and saw and observed Beacham and his accomplices commit the armed robbery. Hollingsworth, Patt and Mitchell each recognized Beacham at that time. Each of these men personally knew him and together with Bobby Swift each identified Beacham in open court as one of the three men who committed the armed robbery.

We are of the opinion that the pre-trial identification of photographs could not establish a basis for excluding the identification of the hold-up victim and the others in the room at the time of the hold-up who observed the same.

The extra-judicial identification not being improper, it follows that the in-court identification could not be considered tainted and thus there is no merit to Beacham's contention that this identification denied him due process

of law. *Caywood* v. *State* (1974), 160 Ind. App. 346, 311 N.E.2d 845, 847; *Jones* v. *State, supra.*

## ISSUE 3:

Beacham contends that the court's failure to grant a mistrial after a witness for the prosecution made certain statements in the presence of the jury is reversible error.

*Discussion:*

The statements complained of were made by Officer Chris Lester and are as follows:

"Q. Uh, my question was, at the time that you read him his constitutional rights, did you use a particular form or anything of this nature?

A. Yes. During the advising of his rights—this was taken from the the (sic) waiver of rights form and during each of the pertinent sessions he refused.

Q. Okay. And did Mr. Beacham sign the form?

A. No sir.

Q. Okay. When you offered the form to him, what did he say?

A. He stated that he had been through this before and that he was aware of his rights and he did not want to talk to us."

Beacham moved for a mistrial, which motion was overruled and the court timely instructed the jury to disregard the statement of the witness.

Beacham contends that this was an "evidentiary harpoon" and the witness' answer created an inference that Beacham had had prior contact with the law; that it implanted in the jurors' minds that Beacham had a criminal history and was highly prejudicial to him.

Beacham relies on the case of *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312. In *White* our Supreme Court stated the test to determine if improper evidence was calculated to make such an impression on the jury that the court's instruction not to consider the same removed the prejudice thereby

created so that the court would need not declare a mistrial. Justice Prentice gave a very scholarly discussion of the rule in *White.* However, we have determined that the facts of the case at bar, when considered under later opinions of our Supreme Court and this court, makes the *White* case inapplicable and not a ruling precedent in this case.

In *Moss* v. *State* (1975), 163 Ind. App. 483, 324 N.E.2d 820, the appellant asserted error in the trial court's overruling his two motions for a mistrial resulting from references in the evidence to crimes other than the one under trial. Appellant saved his record in both instances and the trial court carefully admonished the jury to disregard any references to other crimes.

In *Moss* the court determined the *harmless error rule* as set out in *White* v. *State, supra,* was not applicable, and supported its decision with the case of *Brown* v. *State* (1972), 258 Ind. 412, 281 N.E.2d 801. In *Brown* our Supreme Court held that although the statement of the officer was improper it was not reversible error under the circumstances of that case where the jury had been admonished that the officer's remark was improper and should be disregarded in their deliberations. The court stated further the facts of that case were overwhelming in connecting the appellant with the burglary and found the error was harmless under the circumstances and affirmed the trial court.

Judge Hoffman held, in the *Moss* case:

> "In the case at bar, there was also a prompt admonishment to the jury following the introduction of the objectionable matter. Furthermore, the evidence in the record before this court is so overwhelming as to appellant's guilt that there can be no doubt that he committed the burglary of which he was convicted. . . ." 324 N.E.2d at 822.

and affirmed the judgment of the trial court.

In the case at bar there was a prompt admonishment to the jury to disregard the improper answer in their delibera-

tions. The evidence presented was so overwhelming that there can be no doubt as to Beacham's guilt, and that he and the two companions committed the armed robbery of which he was convicted.

See also, *Saffold* v. *State* (1974), 162 Ind. App. 6, 317 N.E.2d 814.

Finding no reversible error the judgment of the trial court is affirmed.

Robertson, C.J., and Lybrook, J., concur.

NOTE.—Reported at 336 N.E.2d 404.