WILLIAM ROBINSON, JR. *v.* STATE OF INDIANA.

[No. 1-175A1. Filed December 3, 1975. Rehearing denied January 13, 1976. Transfer denied April 20, 1976.]

88

*James S. Foster* and *Richard K. Levi, Earnest, Foster, Eder & Levi,* of Rushville, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—William Robinson, Jr., defendant-appellant (appellant) was charged with two counts, namely, assault and battery with intent to commit robbery and, Count 2, robbery.

The cause was tried to a jury which returned a verdict of guilty on both counts, after which the trial court pronounced sentence as per statute on each of the counts.

Evidence was presented on a petition to reduce the bond, on a motion to suppress hearing and on the trial itself. The evidence introduced in the two hearings and the trial is relevant to the issues here presented for review.

Edna Wilson, a graying, married woman, age 56, at about 8:30 P.M. on October 16, 1971, was en route to her home in Gwynneville, Indiana, from Rushville, Indiana, via Highway 52 when at a point just east of Arlington, Indiana, the car behind began flashing its lights and honking its horn, which attracted her attention and caused her to pull to the right off the travelled portion of the road and stop to determine what was wrong. The car following her stopped and the driver, a male Negro, approached her car, spoke to her and opened the left door, took the keys and told her to move over. She was slow about this and he hit her forcefully three times on the left shoulder, forcing her to the passenger's side of the front seat. He also told her he had a gun and would shoot her.

Appellant backed Mrs. Wilson's car, preparatory to turning around in the highway, and was across the travelled portion

thereof when Robert J. Macy and a young woman topped a hill behind them and had to bring Macy's car to a very slow speed to avoid a collision. Mr. Macy testified he saw the appellant and a sliver gray haired woman wearing glasses who he later learned was Mrs. Wilson together in a 1968 or 1969 blue Chevrolet automobile and that a gold 1970 or 1971 Ford Torino with a vinyl roof was setting to the rear of the Chevrolet. Mr. Macy testified he got a good look at the Negro, and Mrs. Wilson said she saw him standing for about thirty seconds just outside her car and could see him from the lights but it was rather dim. She was with him from 45 minutes to an hour and saw him as he left her car.

Appellant, after turning in front of Mr. Macy, then drove down Highway 52 and left the same where he drove a short distance on a county road and stopped the car, after which he pushed Mrs. Wilson over in her seat and took her purse and removed all the money she had therein, which was about $12.00. He then drove her back to where he had originally stopped and after he got out of her car, told her to "get going quick."

State Trooper Mull investigated this crime and on the evening of the crime Mrs. Wilson was so upset she would not view the photographs the trooper presented her for identification purposes. Five days later Trooper Mull returned to the Wilson home with seven mug shots, of which she pulled one from the group as best fitting the description of the person who allegedly attacked and robbed her. This selected picture was that of the appellant.

Thereafter on June 16, 1972, Mrs. Wilson was taken to a bond reduction hearing of the appellant where, prior to the hearing or seeing the appellant, she was handed the original seven mug shots, one of which was of the appellant, and two additional photos, both of which were recent photos of the appellant.

Prior to the hearing Mrs. Wilson picked out the three

photographs of the appellant and within an hour thereafter in the courtroom she again picked out the three photographs of the appellant. At that hearing she described the appellant as a "slender, six foot colored man and not too dark." She also said the light was dim when she saw him and she was scared and petrified with fear, as a result of which she avoided looking at her assailant's face.

Mrs. Wilson testified that her assailant was sitting in the courtroom and acknowledged that he was the only black person in the room.

Approximately nine months later a motion to suppress hearing was had with further testimony as to the photograph procedures used by the State. The evidence there disclosed that the photographs handed to Mrs. Wilson on the night of the alleged offense were from mug shot files of the Indiana State Police Post at Connersville. They were all of Negroes. The evidence disclosed that no attempt was made to cover up or block out any portion of the photographs or information thereon when they were presented to Mrs. Wilson for identification purposes.

In the trial of the cause Mrs. Wilson stated appellant appeared darker than her earlier impression. However she later positively identified him as her assailant, as follows:

"Q. O.K., I will withdraw the question. Mrs. Wilson, in spite of the fact that you have been shown pictures in the past, was the identification you made in court yesterday independent of any pictures you had been shown in the past?

A. Yes.

Q. So you can independently say the identification you made here yesterday was independent of any pictures or anything that has happened in the past?

A. Yes.

Q. And there is no doubt in your mind whatsoever that the man that was in your car on October 16th, 1971, is whom? Which man?

A. The man sitting at that table over there with a white shirt and with glasses, the black man."

Robert J. Macy, who had stopped within a few feet of Mrs. Wilson's blue Chevrolet and could see Mrs. Wilson and the appellant in her car with his lights on high beam, testified the appellant looked at him and he got a fairly good look at the appellant with his car lights and that he could identify the man in the Chevrolet car if he saw him again. He then testified that "the man at the table looks quite a bit like the man I saw" and indicated the man he was referring to was the appellant. After an extensive cross examination Mr. Macy testified that at the bond reduction hearing in June, 1972, the picture he finally picked out "was the picture that most described the person that I saw than any other pictures." At that hearing Macy did not know appellant's name and was told he did not need to know the name. He testified in the trial that the 1970 or 1971 Torino with the vinyl roof was gold in color. This car was owned by the appellant.

Mr. Macy testified the woman in the blue car was between 50 and 55 and had silver gray hair and glasses and identified her as Mrs. Wilson.

Specifications 1, 2 and 3 of appellant's motion to correct errors are, (1) the judgment is contrary to law, (2) is not sustained by the evidence, and (3) the judgment was given under influence of passion and prejudice.

Specification 4 was that the appellant was denied a fair trial and his right to due process of law by the court's denial of appellant's motion to suppress evidence and for discharge which was filed for the purpose of suppressing the extra-judicial photographic identification of the appellant.

Specifications 1, 2 and 3 will be grouped and treated together. Ind. Rules of Procedure, Appellant Rule 8.3(A)(7).

Appellant's contention under specification 4 is that the pre-trial identification by Edna Wilson denied appellant due

process of law. To sustain his position he contends that at the bond reduction hearing and on a later motion to suppress she was shown certain photographs and then followed up by making the corporeal identification of the defendant. Immediately prior to testifying at the bond reduction hearing three of the nine photos shown Edna Wilson were of the appellant with no duplicate photos of any other individual shown. Two of the photos of appellant were much newer, and measurably so, than the other photographs and three of the nine pictures had the names of the subjects printed on them. Mrs. Wilson also testified that she knew the defendant was William Robinson, Jr. None of the written identification was deleted or covered when shown to Mrs. Wilson.

Appellant further complains there was no line up procedure prior to the trial.

Appellant attempts to sustain his argument on *Simmons* v. *United States* (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, wherein the defendant claimed that the procedure therein had deprived him of due process. The court, in *Simmons,* in speaking of being deprived of due process, said the claim could be sustained only where the "photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Appellant urges that the identification procedure followed in the case at bar was studded with suggestive views of appellant's mug shot, of appellant's newer photos amid old photos, and of the defendant himself, the only black man in the courtroom.

In *Smith* v. *State* (1974), 160 Ind. App. 622, 312 N.E.2d 896, the defendant complained of a prejudicial pre-trial confrontation as she was confronted for identification and was the only black woman present and that the prosecuting

witness had been told prior to his arrival at the jail that the police had a suspect.

The State took the position, *inter alia,* that the prosecuting witness's in-court identification of Smith (the black woman) had a sufficient independent origin from the original pretrial confrontation under the holding of *United States* v. *Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The State, in support of its position, pointed to facts such as the prosecuting witness had ample time to observe Smith under sufficient light at a distance of five feet or less; that he also observed her from the front and side and watched her walk away. The court stated:

"... It is our opinion that these facts have the dual value of supporting the in-court identification by clear and convincing evidence and fulfilling the second portion of the *Stovall* test quoted from *Dillard, supra.*

"It is our conclusion that under 'totality of the circumstances' the identification was reliable and it was not error to overrule the motion to suppress." 312 N.E.2d at 900.

Our Supreme Court, in *Johnson* v. *State* (1972), 257 Ind. 634, 277 N.E.2d 634, wherein the question was raised that we are now passing on, quoted *Simmons* v. *United States, supra,* and discussed the hazards of initial identification by photograph and stated the court was unwilling to prohibit its employment either in the exercise of the court's supervisory power, or still less, as a matter of constitutional requirement and quoted further:

"'... Instead, we hold that *each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.* This standard accords with our resolution of a similar issue in *Stovall* v. *Denno,* 388 U.S. 293, 301-302, 87 S.Ct. 1967, 1972-1973, 18 L.Ed.2d 1199, 1206, and with decisions of other courts on the question of identification by photographs.' (our emphasis.)" 257 Ind. at 639.

Upon reviewing the procedure used in the Johnson case, the court said:

". . . we cannot say it 'was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " 257 Ind. at 640.

The court went on to say:

"Since the extra-judicial identification was not improper it follows that the in-court identification could not then be considered tainted. In addition, the victim had previously known the appellant and had the opportunity to get a look at her assailant when she was assaulted. Her in-court identification was clearly independent of her extra-judicial photographic identification. There is thus no merit to appellant's contention that this identification denied him due process of law." 257 Ind. at 640.

In Manns v. State (1973), 260 Ind. 680, 299 N.E.2d 824, a rape victim was shown two photos simultaneously of the defendants and stated they matched the description of the men who attacked her.

The prosecuting witness testified that the police told her they had the two photographs because of names on a paper and cards in a coat found in her car where she had been raped. Later at a line up she was shown the two photographs and asked to pick the men in the line up who attacked her but did not identify the appellant at that time. Appellant urged that this pre-trial identification was so impermissibly suggestive as to irreparably taint the in-court identification of the appellant.

Our Supreme Court agreed the pre-trial identification by use of the photographs was improper and completely divergent with the principles laid down by that court in Johnson v. State, supra. The court did not concur with appellant that the in-court identification did not have an independent basis so as to constitute a proper identification. The defendant had testified she could see both men when they pushed her into her car; that there was enough light to see both men when they stopped the car and raped her; she was with

them for over an hour; she had opportunity to observe them on the drive back to the vicinity of her home and was looking at them when they threatened her life and departed from the car. She was asked on cross examination on what basis she was identifying the appellant and co-defendant and said "that's the way they looked on March 25th."

The court then said:

"In light of all the above evidence, we find that it is clear that the in-court identification of the appellant had an independent basis. Therefore, regardless of the impropriety of the pre-trial identification through the two photographs, it was not error for the trial court to allow the in-court identification. Finding no error in the proceedings below, the judgment of the trial court is hereby affirmed." 299 N.E.2d 827.

In *Sawyer* v. *State* (1973), 260 Ind. 597, 298 N.E.2d 440, at 444, the court held that the police informing a witness that the suspects were in a group which the witness was called upon to identify, was impermissibly suggestive procedure.

The court went further to say:

"This finding alone, however, does not by itself mean that the trial court committed error by allowing Fry's identification of appellant stand after it had been established that an impermissibly suggestive procedure had been used in an out-of-court display. The in-court identification may nevertheless be admitted, even though the confrontation procedure was suggestive, if 'under the totality of the circumstances' the in-court identification is reliable. . . ." 298 N.E.2d at 444.

See, also, *Emerson* v. *State* (1972), 259 Ind. 399, 287 N.E.2d 867, 870; *Simpson* v. *State* (1975), 164 Ind. App. 307, 328 N.E.2d 462, 465.

We have hereinabove set out the facts of the case together with evidence from the two pre-trial hearings and the case in chief at length and under the holdings of the ▮ above cases, in considering the totality of the circumstances, the in-court identification is reliable and appellant was afforded his right to due process of law.

It is our further opinion that the evidence is fully adequate to sustain the conviction and that there was no evidence to sustain the alleged error that the judgment was given under influence of passion and prejudice. The judgment was not contrary to law.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 337 N.E.2d 824.