**Rosevito [sic] HOSKINS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 3–685A156.

Court of Appeals of Indiana, Third District.

Dec. 17, 1985.

Robert R. Garrett, Public Appellate Counsel, Lake Superior Court, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Presiding Judge.

After a jury trial, Rozivito Hoskins was convicted of Criminal Recklessness, a Class C felony.[1] On appeal, Hoskins raises the following issue, which we have restated:

Whether the trial court erred by refusing to suppress the in-court identification of Hoskins by Janet Fijut, when her pre-trial identification involved only five photographs.

Affirmed.

On June 29, 1984, at about three o'clock in the morning, Carlos Candelaria, the victim, and Janet Fijut, his friend, were walking along a street in Gary, Indiana. A white car containing five men pulled alongside them and the man in the front passenger seat called out to Fijut, "White bitch, come with us." Candelaria and Fijut ignored the remark and continued walking. The car drove past them and stopped. As they walked by the car they heard five shots, one of which hit Candelaria in the back. They ran for cover and, when the shooting stopped, Fijut called the police.

The following day Fijut went to the Gary police station for questioning. While there, she viewed an array of five photographs from which she identified Hoskins as the man sitting in the front passenger seat of the white car. Hoskins's photograph depicted his arrest date, although Fijut testified that she did not notice it as she viewed the photographs. Fijut was apparently aware, at the time she viewed the photographs, that the police "had gotten the fellows in the white car." Record at 187.

At trial, Hoskins attempted to suppress Fijut's in-court identification. Hoskins asserted that the pre-trial photographic identification was unduly suggestive and that the in-court identification was, therefore, impermissibly tainted. The trial court overruled Hoskins's motion to suppress Fijut's in-court identification. Later, Fijut made an independent in-court identification of Hoskins as the man in the front passenger seat of the white car. On appeal, Hoskins argues that the trial court's refusal to suppress Fijut's in-court identification was error.

■ We first treat a procedural matter raised by the State. The State asserts that Hoskins' failure to introduce the photographic display into evidence, thus making it a part of the record, results in his waiver of the issue. We perceive no deficiency in the record which would impair our resolution of this question. In addition, both parties have fully briefed the substantive issue. For this reason, and because we prefer to resolve this case on its merits,[2] we will reach the substantive issue.

■ The trial court did not err in refusing to suppress Fijut's in-court identification of Hoskins. Our Supreme Court has consistently used the "independent basis" test when dealing with an in-court identification asserted to be tainted by an impermissibly suggestive pre-trial photographic identification. *Henson v. State* (1984), Ind., 467 N.E.2d 750, 753; *Williams v. State* (1984), Ind., 465 N.E.2d 1102, 1104; *Allen v. State* (1982), Ind., 439 N.E.2d 615, 618. This test provides that even if the pre-trial procedure is suggestive, the trial court is correct in refusing to suppress an in-court identification if it finds that the in-court identification is supported by a basis independent of the pre-trial procedure. *Henson, supra; Williams, supra; Allen, supra.* On review this Court will look to the totality of circumstances to determine whether there was an independent basis for the identification and whether the pre-trial procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Allen, supra.* Thus, our review involves two questions: First, was the photographic identification procedure impermissibly suggestive?

1. IC 35-42-2-2(b) (Supp.1985) provides:
   "A person who recklessly, knowingly, or intentionally inflicts serious bodily injury on another person commits criminal recklessness a Class D felony. However, the offense is a Class C felony if committed by means of a deadly weapon. *As amended by Acts 1981. P.L. 300, SEC. 1.*"

2. *See, e.g., Chuck Callahan Ford, Inc. v. Watson* (1982), Ind.App., 443 N.E.2d 79, 80.

Second, even if it was, did Fijut have an independent basis for her in-court identification of Hoskins? We turn first to Hoskins's assertion that the pre-trial identification was impermissibly suggestive.

Hoskins argues that the small number of photographs, the statement by a police officer to Fijut that the men in the white car had been apprehended, and the presence of Hoskins's arrest date on his photograph [3] combine to make the photographic display impermissibly suggestive. Our examination of the record reveals that, while Hoskins's argument is not without merit, the pre-trial identification procedure was not so suggestive as to taint the in-court identification. We come to this conclusion for two reasons. First, the use of five photographs for a pre-trial identification has been upheld—although not wholeheartedly endorsed—by our Supreme Court. *Johnson v. State* (1972), 257 Ind. 634, 640, 277 N.E.2d 791, 794 ("Although the use of more than five photographs would have been highly desirable we cannot say that this alone made [the pre-trial identification] overly suggestive.").

Our second reason for concluding that the procedure was not unduly suggestive is based on Fijut's testimony that, when she examined the photographic display, she did not observe the dates on any of the photographs:

"Q. (By deputy prosecutor) Did you pay any attention to the plates hanging around the necks, the numbers or anything?

A. (By Fijut) No, nothing, just the faces, that's all."

Record at 194.

Fijut further testified on cross-examination:

"Q. (By defense attorney) In fact, there are different dates on all four (4) of those photos?

A. (By Fijut) I never paid any attention to them; I looked at the faces.

I couldn't tell you what [the dates] were."

Record at 225. We are not permitted, of course, to judge the credibility of a witness. In addition, Hoskins has given us no reason to reject Fijut's testimony. We agree with the trial judge that the photographic identification was not unduly suggestive.

■ Arguendo, even if the photographic identification had been unduly suggestive, Fijut had an independent basis for her in-court identification of Hoskins. In determining whether an independent basis exists for Fijut's in-court identification of Hoskins, we will examine the "totality of circumstances," including (1) the length of time Fijut viewed Hoskins just prior to the shooting, (2) the distance between them, (3) the lighting conditions, and (4) Fijut's capacity for observation. *Harding v. State* (1984), Ind., 457 N.E.2d 1098, 1102; *Allen v. State* (1982), Ind., 439 N.E.2d 615, 618. We examine each of the factors in turn.

First, in the instant case, Fijut testified that she viewed Hoskins for several seconds just prior to the shooting. This is a shorter time than was the case in either *Harding, supra* (witness viewed defendant for more than fifteen minutes) or *Allen, supra* (witness viewed defendant for five minutes).

Second, the distance between Fijut and Hoskins was four or five feet. Record at 176. This Court has held that a witness's observation of a defendant from a distance of two hundred feet, at night under artificial lighting, was sufficient to provide an independent basis for that witness's in-court identification. *Hart v. State* (1981), Ind.App., 412 N.E.2d 833, 836.

Third, both Fijut and the victim testified that the scene of the shooting was well lit by light from a nearby parking lot and because the car carrying Hoskins was under a street light. Record at 160, 229. As indicated above, a witness's observation under artificial lighting has been held to provide a sufficient independent basis for an

---

**3.** Hoskins's photograph showed his arrest date on a plate hanging around his neck. Record at 200.

in-court identification. *Hart v. State, supra. See also Horn v. State* (1978), 176 Ind.App. 527, 532, 376 N.E.2d 512, 516; *Cody v. State* (1976), 169 Ind.App. 36, 37–38, 345 N.E.2d 849, 851.

Finally, Fijut's view of Hoskins was unobstructed. On direct examination she testified:

> "When I turned and looked, I looked directly into his face, directly."

Record at 206. And, on cross-examination, Fijut testified:

> "I didn't look at the car, I looked directly into his face. That was the face I saw. Into his eyes?
>
> Right in. It was like that fast (indicating); it was like my mind took a picture."

Record at 227. Also, Fijut's in-court identification of Hoskins was unequivocal. Record at 206, 227.

Our examination of the totality of circumstances reveals that Fijut had sufficient independent basis for her in-court identification of Hoskins and that the photographic identification procedure did not result in a substantial likelihood of misidentification. The trial court correctly refused to suppress Fijut's in-court identification of Hoskins. The judgment below is therefore affirmed.

HOFFMAN, J., concurs.

GARRARD, J., concurs with opinion.

GARRARD, Judge, concurring.

I agree there was an independent basis for the identification of Hoskins. Under the evidence I find nothing unduly suggestive in the photographic display identification.

I therefore concur.